A07A1958. THE WATERFRONT, LLP v. RIVER OAKS CONDOMINIUM ASSOCIATION, INC.

(651 SE2d 481)

BLACKBURN, Presiding Judge.

In this declaratory judgment action, The Waterfront, LLP ("Waterfront") appeals the denial of its motion for summary judgment and the order of judgment in favor of River Oaks Condominium Association, Inc. (the "condo association"). Specifically, Waterfront argues that the trial court erred in ruling that an amendment to a declaration of condominium pertaining to property purchased by Waterfront was not rendered a nullity for failure to comply with provisions of the Georgia Condominium Act,[1] and in ruling that this amendment restricted Waterfront's ability to develop the property. For the reasons set forth below, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c); *Britt v. Kelly & Picerne, Inc.*[2] "On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant." *McCaskill v. Carillo.*[3]

So construed, the evidence shows that in February 1984, George Hsu and other members of the Hsu family became owners of property in McIntosh County which they later designated as the River Oaks Condominiums. The property also included a contiguous tract of mostly undeveloped land, which Hsu planned to use for the expansion

---

[1] OCGA § 44-3-70 et seq.

[2] *Britt v. Kelly & Picerne, Inc.*, 258 Ga. App. 843 (575 SE2d 732) (2002).

[3] *McCaskill v. Carillo*, 263 Ga. App. 890 (589 SE2d 582) (2003).

of the condominiums. On March 31, 1989 Hsu filed an initial Declaration of Condominium for River Oaks, which created Phase I of the development. In April 1989, and November 1990, respectively, Hsu filed two amendments to the Declaration, which created Phase II and Phase III of River Oaks. On March 29, 1996, Hsu filed a third amendment to the Declaration, which pertained to the undeveloped contiguous tract of land and designated that tract as Phase IV. This amendment, and the plat filed with it, provided that it was in accordance with the initial Declaration and also indicated that Phase IV was to include 30 condominium units. The amendment reallocated the percentage of interest in common elements for unit votes and liability for common expenses. During the time Hsu owned the property, condominium units were built and sold on Phases I, II, and III. No condominium units were built on Phase IV during that time, but a dock and boat ramp were constructed on that portion of the property.

On August 14, 2002, Waterfront purchased River Oaks Condominiums, including the undeveloped Phase IV property, from Hsu and his family. Shortly thereafter, a dispute arose between Waterfront and the condo association over the proposed development of Phase IV. Believing that the Phase IV property had not been made part of River Oaks Condominiums in accordance with the requirements of the Georgia Condominium Act, Waterfront indicated its intention to develop the property by building more than the 30 units specified in the third amendment to the Declaration. The condo association opposed this plan, arguing that any development of Phase IV of the property was subject to the restrictions contained in the Declaration of Condominium, including the third amendment to the Declaration. Consequently, Waterfront filed a complaint for declaratory judgment, in which it sought an order declaring that it owned Phase IV of the River Oaks Condominiums free and clear of any conditions, covenants, or restrictions. Waterfront moved for summary judgment as to this issue but was unsuccessful. After both parties agreed to dismiss all other claims and counterclaims, the trial court adopted its denial of Waterfront's motion for summary judgment as its final judgment and entered final judgment in favor of the condo association. This appeal followed.

In its sole enumeration of error, Waterfront contends that the trial court erred in entering judgment in favor of the condo association, arguing that the third amendment to the Declaration pertaining to Phase IV was a nullity because it did not comply with OCGA §§ 44-3-72 and 44-3-83 (c) of the Georgia Condominium Act, and that therefore Waterfront's ability to develop the property was not restricted. We disagree.

OCGA § 44-3-72 provides:

A condominium shall come into existence upon the recordation of the declaration pursuant to this article and of the plats and plans required by Code Section 44-3-83. The declaration shall be duly executed by or on behalf of all of the owners and lessees of the submitted property.

OCGA § 44-3-83 (a) in part provides:

> *Prior to the first conveyance of a condominium unit,* there shall be recorded one or more plats of survey showing the location and dimensions of the submitted property; the location and dimensions of all structural improvements located on any portion of the submitted property; the intended location and dimensions of all contemplated structural improvements committed to be provided by the declaration on any portion of the submitted property; and, to the extent feasible, the location and dimensions of all easements appurtenant to the submitted property or otherwise submitted to this article as part of the common elements.

(Emphasis supplied.) In addition, OCGA § 44-3-83 (b) (2) (A) in part provides:

> There shall be recorded *prior to the first conveyance of a condominium unit*: . . . [a] certification by such architect or engineer to the effect that he has visited the site and viewed the property and that, to the best of his knowledge, information, and belief: [t]he exterior walls and roof of each structure are in place as shown on the plans. . . .

(Emphasis supplied.) Finally, OCGA § 44-3-83 (c) requires that prior to the first conveyance of a condominium unit, the plats and certifications of an expandable condominium, such as River Oaks, comply with subsections (a) and (b) of this Code section.

Waterfront claims that because no units have been constructed on Phase IV of the property and, as a consequence, no architect's certification of the plan has been recorded, the third amendment to the Declaration, which purported to create Phase IV, is a nullity. However, such a claim ignores the plain language contained in all of the relevant subsections of OCGA § 44-3-83, which state that the time by which the statute's requirements must be met is "prior to the first conveyance of a condominium unit." Since there has been no evidence presented of any attempted conveyance of any of the proposed units in Phase IV of the property, Waterfront's contention that the third

amendment to the declaration failed to comply with the Condominium Act is, at best, premature.

Moreover, this contention is irrelevant to the critical question, which is whether the third amendment is a binding restriction that precludes Waterfront from building more than 30 condominium units on Phase IV of the property. We hold that the express restriction contained in the third amendment to the Declaration, which provided that construction in Phase IV of the development would be limited to 30 units, does, in fact, bind Waterfront as the purchaser of the River Oaks property. "[R]estrictive covenants may apply to lots in a planned development under an implied covenant theory, even if the developer failed to comply with all formalities, as long as the landowner had knowledge of the restrictive covenants at the time he purchased the property." *McLean v. Turtle Cove Property Assn.*[4] See *Westhampton, Inc. v. Kehoe.*[5] "[T]he need for such a rule is particularly compelling where third parties have relied on the applicability of the covenants." *McLean,* supra, 222 Ga. App. at 710 (1). See *Westhampton, Inc.,* supra, 227 Ga. at 646; *Parker v. Clary Lakes Recreation Assn.*[6]

Here, while Waterfront contends that the third amendment to the Declaration failed to comply with the Condominium Act, it is undisputed that both the third amendment and the plat detailing the proposed development plans for Phase IV of the property were properly recorded.[7] Thus, Waterfront purchased the River Oaks property with the knowledge that construction in Phase IV of the development would be limited to 30 units, and with the knowledge that many owners of units in the completed Phases, as well as the condo association representing those owners, had relied upon that restriction in purchasing their units. See *Westhampton, Inc.,* supra, 227 Ga. at 646; *Parker,* supra, 265 Ga. App. at 95 (1); *McLean,* supra, 222 Ga. App. at 710 (1). Accordingly, the trial court did not err in ruling that the restriction in the third amendment to the Declaration bound Waterfront.

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

---

[4] *McLean v. Turtle Cove Property Assn.,* 222 Ga. App. 709, 710 (1) (475 SE2d 718) (1996).

[5] *Westhampton, Inc. v. Kehoe,* 227 Ga. 642, 645-646 (182 SE2d 430) (1971).

[6] *Parker v. Clary Lakes Recreation Assn.,* 265 Ga. App. 93, 95 (1) (592 SE2d 880) (2004).

[7] Although Waterfront claims that it was not initially aware of the third amendment to the Declaration, it has not disputed the fact that the amendment was properly recorded. Indeed, in a separate but related action, Waterfront has sued the attorney who conducted the title review of the River Oaks property for his failure to inform Waterfront regarding the existence of the properly recorded third amendment. See *The Waterfront v. Commonwealth Land Title Ins. Co.,* 284 Ga. App. XXIII (Case No. A07A0715, decided April 10, 2007), aff'd without opinion.

DECIDED AUGUST 23, 2007 —
RECONSIDERATION DENIED SEPTEMBER 7, 2007 —

*Cheney & Cheney, Curtis V. Cheney, Jr.*, for appellant.
*Adam S. Poppell III*, for appellee.
*Kimberly C. Harris*, amicus curiae.